STATE OF HAWAII, Plaintiff-Appellant, *v.* RAYMOND LOPES, also known as Joseph Gomes, Defendant-Appellee

NO. 7469

JANUARY 15, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

*Per Curiam.* This is an appeal by the State from the trial court's order granting the defendant's motion to suppress a handgun found on his person.

Officer Jackson, on day patrol, was directed by the police radio dispatcher to proceed to the vicinity of the City Inn Bar at Kekaulike Street to investigate a report of a male individual in possession of a pistol. He arrived at the bar's parking lot about a minute after receiving the call. He left his vehicle and approached a group of up to ten men sitting on a wall at the makai-ewa corner of the parking lot. The officer ordered all of them to stand up and began to frisk them on the "possibility that one of them was concealing the weapon." He had frisked four or five of the men when Officer Silva, who had also heard the broadcast, arrived on the scene. Before leaving his vehicle, the officer recontacted the police dispatcher for a more definite description of the suspect. He was informed that the anonymous complainant had reported seeing a Caucasian male, who was approximately six feet tall and wearing a yellow shirt, wielding a gun in the vicinity of the City Inn Bar. Since only the defendant in the group appeared to fit this description, Officer Silva pointed towards him and Officer Jackson immediately approached

the defendant, for the purpose of frisking him. The defendant, however, refused to be frisked.[1]

On these facts we affirm the trial court's suppression of the evidence. In *State v. Barnes,* 58 Haw. 333, 338, 568 P.2d 1207, 1212 (1977), we said:

> [T]he search and seizure in a stop and frisk situation is justified only if from the specific conduct of the defendant, or from reliable information, or from the attendant circumstances, the officer may reasonably infer that the person stopped is armed and presently dangerous.

There was nothing about the conduct of the defendant, and nothing in the attendant circumstances, from which the police could have reasonably inferred that he was then armed and dangerous. His refusal to be searched obviously was an exercise of his constitutional rights and could not be taken as basis for such an inference. The only possible justification for the police conduct, therefore, was the tip from the anonymous informant. But while the tip might have been grounds for a field interrogation, *see State v. Giltner,* 56 Haw. 374, 537 P.2d 14 (1975); *State v. Tsukiyama,* 56 Haw. 8, 525 P.2d 1099 (1974), it could not supply the basis for an investigative detention, *compare State v. Kea,* 61 Haw. 566, 606 P.2d 1329 (1980) or justify the search of his person, *State v. Barnes, supra.*

The circumstances here are unlike those which enabled the Court in *Adams v. Williams,* 407 U.S. 143 (1972), to sustain the validity of the frisk in that case. There the informant was known to the officer personally and had provided him with information in the past. And the Court further observed:

> This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. [407 U.S. at 146.]

---

[1] Officer Jackson testified:

He backed away from — he started to sit on the wall and I went to frisk his waist, then he got off and he tried to leave the area. At that time he quickly walked around the wall to the other side of the wall. I quickly followed him trying to frisk him further, and he pushed my hand away and, you know, he didn't want to be frisked. It was plain he didn't want to be frisked. So I hurriedly frisked him and as I did, I felt the bulge in his left rear pocked [sic] which I knew was a gun. When I felt it, it just felt like a gun, and I stuck my hand inside and retrieved it.

162

Affirmed.

*Robert S. N. Young,* Deputy Prosecuting Attorney on the briefs, for plaintiff-appellant.

*Clayton C. Ikei* for defendant-appellee.